UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | Civil Action No. 3:08-cv-2314 FLW DEA |
| Plaintiff, : | |
| : | **MEMORANDUM OPINION** |
| v. : | **AND ORDER** |
| : | |
| **MICHAEL CHAZEN,** : | |
| Defendants. : | |

**ARPERT, United States Magistrate Judge**

These matters come before the Court on Motions by Caryn Chazen, wife of Defendant Michael Chazen, to Quash a Subpoena served upon her, ECF No. 24, and by Plaintiff United States of America to Compel Deposition and Responses to Discovery from Defendant. ECF No. 28. Both motions are opposed. ECF Nos. 25,31. The Court has fully reviewed the submissions of the parties and movants, and considers same without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiff's Motion to Compel Deposition and Responses to Discovery is **GRANTED**, and the Motion of Ms. Chazen to Quash the Subpoena is **DENIED**.

**I.     BACKGROUND**

The facts and procedural history of this 10-year-old case are well known to the parties and need not be recited at length. Briefly, the underlying action concerns unpaid income taxes, penalties, and interest for the tax years 1995 through 2003. On September 23, 2009, U.S. District Judge Mary L. Cooper entered a Consent Judgment in favor of Plaintiff USA and against Defendant "in the amount of $406,084.05 as of May 5, 2008, together with all interest and penalties that have accrued and will continue accruing according to law" for those tax years. ECF

1

No. 81. Concomitant with the entry of that Order, a notice was entered on the docket stating, "Civil case terminated." *See* October 9, 2009 Docket entry. There was no further activity on the docket until July 7, 2018, when Plaintiff moved for an Installment Payment Order. ECF No. 14. There Plaintiff stated Defendant had defaulted on two payment plans entered into pursuant to the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001 through 3008. Id. Under the first agreement, Mr. Chazen was to pay $25,000 by December 23, 2009, and then pay $75,000 more by December 31, 2009, and $75,000 each year thereafter, until the balance of the judgment was paid in full. Id. at p.3. Plaintiff contends Defendant made none of these payments. Id. Under the second agreement, Defendant was to pay $1,000 a month. Id. Plaintiff says Defendant made $16,000 in payments before defaulting on this plan. Id. Defendant contends he has paid close to $75,000 under the plan. Plaintiff states that since the entry of the Consent Judgment the amount at issue has risen to in excess of $572,000.

In October 2018, Ms. Chazen moved to quash Plaintiff's Subpoena under which she was to produce "documents reflecting current payoff amount of any mortgage or other security interest on 5 Andrea Court, Manalapan NJ 07726," and submit to a deposition. ECF No. 24.

On November 8, 2018, Plaintiff filed its Motion to Compel Defendant to appear for a deposition and to "provide proper responses to the Government's interrogatories and document requests." ECF No. 28.

II. **LEGAL STANDARD**

As the Supreme Court has stated, "[t]he rules governing discovery in postjudgment execution proceedings are quite permissive." Republic of Argentina v. NML Capital, Ltd., 573 U.S. 134, 138 (2014). Fed. R. Civ. P. 69(a)(2) provides: "In aid of the judgment or execution, the judgment creditor…may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." *See also* 12 C.

Wright, A. Miller, & R. Marcus, Federal Practice and Procedure § 3014, p. 160 (2d ed. 1997) (court "may use the discovery devices provided in [the federal rules] or may obtain discovery in the manner provided by the practice of the state in which the district court is held"). "The general rule in the federal system is that, subject to the district court's discretion, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Republic of Argentina, 573 U.S. at 139 (*quoting* Fed. Rule Civ. Proc. 26(b)(1)); *see also* Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000). Information sought by the parties need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). During discovery, "[a] party may serve on any other party a request within the scope of Rule 26(b)" to produce documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Of course, the responding party is not obliged to produce documents it does not possess or can not obtain. *See* Bumgarner v. Hart, Civ. No. 05–3900, 2007 WL 38700, at *5 (D.N.J. Jan. 4, 2007) (holding that the Court cannot order production of documents that are not in the responding party's possession or control). Not only must the requested documents be in the responding party's possession or control, they also must be relevant. The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. Barnes Found. v. Twp. of Lower Merion et al., Civ. No. 96-372, 1996 WL 653114, at *1 (E.D.Pa. 1996).

While the scope of discovery is undoubtedly broad, the Federal Rules also provide that a Court "must limit the frequency or extent of discovery otherwise allowed" if it concludes that: (1) the discovery sought is cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the proposed

discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C). Further, "the Court has a responsibility to protect privacy and confidentiality interests" and "has authority to fashion a set of limitations that allow as much relevant material to be discovered as possible...while preventing unnecessary intrusions into legitimate interests that may be harmed by the discovery of material sought." Schmulovich v. 1161 Rt. 9 LLC, Civ. No. 07-597, 2007 WL 2362598, at *1–2 (D.N.J. Aug. 15, 2007); *see also* Pearson, 211 F.3d at 65; Fed. R. Civ. P. 26(c). Finally, Rule 37(a) allows a party to file a motion to compel discovery where the opposing party fails to respond adequately to a document request propounded pursuant to Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). Ultimately, it is within the Court's discretion whether to grant a motion to compel disclosure. In re Cendant Corp. Sec. Litig., 343 F.3d 658, 668 (3d Cir. 2003).

## III. DISCUSSION

The Court will address each motion in turn.

### A. Ms. Chazen's Motion to Quash

Plaintiff seeks to collect the unpaid amount due pursuant to the 2009 Consent Judgment against Defendant. Considering the failure of Defendant to fully satisfy this Judgment and pursuant to Fed. R. Civ. P. 26, Plaintiff served a Subpoena Duces Tecum on Defendant's wife. By that Subpoena Plaintiff sought documents regarding payments made on a mortgage loan that is secured by the marital residence and to depose Ms. Chazen. See ECF No. 24-1.

Ms. Chazen seeks to quash the Subpoena. In her one-page letter Motion, Ms. Chazen contends the Subpoena is "unduly burdensome, unreasonable, and not warranted." ECF No. 24. She further states there is "no relevancy to the information being sought" because the "case is closed, terminated and settled." Id.

Plaintiff responds that "her testimony is critical to a dispute before the Court, namely, whether the installment payments that the United States seeks from judgment debtor Michael Chazen improperly fail to account for the fact that he provides his wife with the money to make the mortgage payments on a property deeded solely to her." ECF No. 25 at p.1. Plaintiff contends Defendant disputes his ability to pay the judgment because he supplies the funds used to pay the mortgage on property at 5 Andrea Court. Since that property is deeded in Ms. Chazen's name, Plaintiff says, it is crucial to glean details about the mortgage payments from her, and thus the Subpoena seeks documents and information that are relevant. Id. at pp.2-3.

The Court holds as an initial matter that the Subpoena served on Ms. Chazen is a valid expression of Fed. R. Civ. P. 69, which expressly provides authority for a judgment creditor, such as Plaintiff, to obtain discovery from "any person" to aid in the collection of the judgment. It is clear the Rule provides for postjudgment discovery, contrary to the argument of Ms. Chazen that there is no information needed from her because the case has been "closed, terminated and settled." Even if these terms do accurately describe the state of this litigation, these terms are not an obstacle to postjudgment discovery. Afterall, a judgment is defined as "a court's final determination of the rights of the parties in a case," while a judgment creditor is defined as "[a] person having a legal right to enforce execution of a judgment for a specific sum of money." Black's Law Dictionary 846, 848 (7th ed. 1999). It is axiomatic, therefore, that a person can not be a judgment creditor without there being a judgment. And upon the entry of a judgment, a case will be considered on the docket to be closed and/or settled.

Furthermore, the language of the Rule makes clear that Ms. Chazen is a proper subject of a postjudgment subpoena because the definition of "any person" extends beyond the judgment debtor. Fed. R. Civ. P. 69(a)(2). Here, Ms. Chazen's husband agreed to entry of the Consent

Judgment against him. According to Plaintiff, Mr. Chazen says he can't afford the repayment terms sought by Plaintiff in part because he is responsible for paying the mortgage on the marital residence at 5 Andrea Court. As that property is deeded in her name and not that of Defendant, the Court is persuaded that information on how it is that Defendant is paying off a mortgage on property he does not own[1] is relevant to Plaintiff's inquiry.

Finally, the Court does not find that providing documents and deposition testimony sought by Plaintiff is unnecessarily burdensome or unreasonable. While the scope of discovery is undoubtedly broad, the Federal Rules also provide that a Court "must limit the frequency or extent of discovery otherwise allowed" if it concludes that: (1) the discovery sought is cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C). Pursuant to Rule 26(b)(1), requested discovery must be "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Plaintiff seeks to collect a judgment totaling more than $570,000. Ms. Chazen has made no showing that the Subpoena and the information sought is disproportionate to a judgment of that substantial size, nor has she provided any details to evidence that the needs of the case and/or the parties' resources are outweighed by the burden or expense of producing the

---

[1] From exhibits submitted by the parties, Ms. Chazen is the only listed borrower for the actual mortgage.

mortgage-payment documents nor of sitting for a deposition. Accordingly, the Court denies Ms. Chazen's motion because it is clear Plaintiff is allowed by the Federal Rules to conduct postjudgment discovery, because it is clear the information sought is relevant, and because on its face any costs of complying with the Subpoena are not disproportionate to the collection of a sizeable judgment, nor is the Subpoena unduly burdensome or unreasonable.

### B. Plaintiff's Motion to Compel Deposition and Responses to Discovery From Defendant Michael Chazen

Plaintiff seeks to compel a deposition of Defendant and answers to postjudgment interrogatories that are more responsive than the broad objections raised by Defendant. Plaintiff contends, as it did in its submission regarding Ms. Chazen's motion discussed above, that it is entitled to such discovery by Fed. R. Civ. P. 69 "as it pertains to Michael Chazen's ability to pay the United States' judgment against him." ECF No. 28 at p.2. Plaintiff further contends Defendant "invited this discovery" by arguing that he can not pay more than $1,500 a month in an installment plan because he is paying a mortgage loan on a property he does not own and for which he is not liable. Id. Finally, Plaintiff says Defendant "*agreed* to provide this discovery" and represented same to the Court in requests of both Plaintiff and Defendant to adjourn hearings related to Plaintiff's separate installment-payment motion. Id.; *see also* ECF No. 14.

Defendant argues that the requested discovery is unnecessary because he has provided documents establishing that Defendant "does not have a title interest in the jointly occupied marital residence" that always has been titled in his wife's name. ECF No. 31 at p.1. Defendant further argues the discovery is duplicative because "it is undisputed that Michael Chazen is the source" of the monthly payments made on the mortgage on the marital residence. Id. Finally, while Defendant does not address Rule 69, he does contend that "this matter was previously closed per Stipulation of Settlement, with all payments made thereunder, a fact that is not

7

disputed."[2] In an earlier certification in opposition to Plaintiff's Installment Plan Motion and his wife's Motion to Quash Subpoena, Defendant's counsel states there was a payment plan[3] agreed to concomitant with the entry of the 2009 Consent Judgment, and this payment plan was superseded by a Stipulation of Settlement dated November 17, 2011 under which Defendant was to pay $1,000 a month until the judgment was satisfied.[4] *See* Wideman Cert. at ECF No. 27; *see also* Id. at Exhibits A and C. Neither plan was ever approved by a court or entered as an order on the docket. Regardless, Defendant argues that the stipulations made no reference to 26 U.S.C. § 6159(b)(3), which states that "the Secretary may alter, modify or terminate" a payment plan agreement "[i]f the Secretary makes a determination that the financial condition of a taxpayer…has significantly changed." Id. Defendant argues Plaintiff's motions should be denied and his wife's Motion granted because Plaintiff has made not showing of a "substantial change in the financial condition of the Defendant as required by statute." As a result, Defendant contends, Plaintiff can not rescind the installment agreement and the matter should be considered closed. Id. at ¶9. Further, Defendant contends Plaintiff "has demanded Subpoenas of Defendant and his non-party spouse to attempt to determine after the fact as regards 'significantly change' as an attempt to justify the disallowance of the monthly residential mortgage payment as an allowed necessary housing expense." Id. at ¶19.

As stated above, Rule 69 expressly provides authority for a judgment creditor, such as Plaintiff, to obtain discovery from a judgment debtor to aid in the collection of the judgment.

---

[2] As discussed later, Plaintiff does dispute this point.
[3] Under this plan, Defendant was to pay $25,000 within 90 days of the plan's entry as an order of the Court, with annual $75,000 payments after that until the judgment was satisfied. At the original judgment of roughly $406,000 and assuming no back interest or penalties accrued, that plan would have been completed in 5.1 years.
[4] At the original judgment of roughly $406,000 and assuming no back interest or penalties accrued, this plan would have been completed in 33.8 years. At the present amount of more than $570,000 and assuming no further back interest or penalties accrue, this plan would be completed in 47.5 years.

Since to be a judgment creditor requires that there be a judgment entered on the record, it is clear the Rule provides for postjudgment discovery. As a general principle and as stated above, the Court is not persuaded by Defendant's contention that discovery should not be allowed merely because the docket shows the litigation is closed and/or terminated.

Defendant objected to all 14 of Plaintiff's postjudgment interrogatories as follows: "This case is closed and settled. This interrogatory seeks irrelevant information, is overbroad, cannot lead to discovery, and is otherwise objectionable." ECF No. 28-1 at pp.24-28. To six of the 14 interrogatories, Defendant provided the same a one-sentence answer: "Caryn is not employed by me or paid for services." Id. Based on the above principles, it is clear Defendant's objections themselves were irrelevant and overbroad, because Plaintiff is allowed by Rule 69 to conduct postjudgment discovery in aid of the enforcement, or collection, of a judgment.

The question before the Court then is whether the postjudgment discovery requests ought to be limited in some way. Rule 26(b)(2)(C) vests the District Court with the authority to limit a party's pursuit of otherwise discoverable information when the burden of a request is likely to outweigh the benefits. Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999). ("Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed."). Accordingly, Plaintiff's Motion to Compel may be denied if the Court finds there exists a likelihood the resulting benefits of the requested discovery would be outweighed by the burden or expenses imposed by the discovery requests after assessing the following factors: (i) the unreasonably cumulative or duplicative effect of the discovery; (ii) whether "the party seeking discovery has had ample opportunity to obtain the information by [other] discovery"; and (iii) "the needs of the case, the amount in controversy, the

parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

Plaintiff seeks to collect a Judgment now totaling more than $570,000. That is a substantial amount of money in controversy, and Defendant makes no showing that the resulting benefits of the discovery sought are outweighed by the considerations set forth in the third prong of Rule 26(b)(2)(C). As a result, the Court's inquiry rests on consideration of the Rule's two other prongs: whether the discovery is "unreasonably cumulative or duplicative," and whether "the party seeking discovery has had ample opportunity to obtain the information by [other] discovery."

The Court begins with the observation that Plaintiff's 14 interrogatories are divided into four categories. Questions one and two request information about the workforce at Defendant's law firm. Questions three through six are directed at the role of Defendant's wife at that business and seek details about compensation she receives for services she provided to the business. Questions seven through ten ask Defendant if his wife has ever received monies or property from sources outside his business and/or whether she ever used such funds to pay the mortgage on the Andrea Court property. The final four questions probe entries on Defendant's recent tax returns. The only questions to which Defendant provided substantive answers beyond the objections quoted above were three through eight, where he added to his standard objection the sentence: "Caryn is not employed by me or paid for services." For two of those interrogatories that answer is nonresponsive, as the questions seek details of any monies or property his wife has ever received from sources other than Defendant's business. Regardless, the Court is persuaded that the interrogatories seek information that is relevant to aid in Plaintiff's attempts to enforce the Consent Judgment.

Plaintiff contends Defendant has refused to produce requested documents surrounding the payments on the Andrea Court mortgage. By letter dated August 5, 2019, Defendant requested a hearing on Plaintiff's Installment Plan Motion. ECF No. 17. In that letter, Defendant stated he was compiling "all the exhibits," which would be filed once personal identifiers were redacted. Id. On August 15, 2018, Defendant provided additional documents to supplement his response to the Installment Plan Motion. ECF No. 18. Included in that supplemental response was Defendant's certification stating: "My wife Caryn works with me and does not get separately paid. It is true that the mortgage gets paid from her checking account. However, that is with funds I provide to cover the household expenses." Id. at p.2, ¶5. He further stated in the certification: "It may be that there was a concern that she possibly earns an income elsewhere; but that is not accurate." Id. at p.3, ¶6. Submitted with the certification was a copy of an August 3, 2019 letter from Defendant's counsel, Ken Landis, to Plaintiff in which Mr. Landis informed Plaintiff "that the only money that Mr. Chazen's wife has is from Mr. Chazen's employment. She is an unpaid paralegal in his office. He gives her the money to make the mortgage payment from her bank account. The money does not come independently from Mrs. Chazen." Id. at p.4. Also submitted was an August 2, 2018 affidavit provided by Linda M. Hanson, a member of Mr. Landis's staff, where she stated: "The DOJ further disallowed $3,662 of the 'housing and utilities' expense for the mortgage payment paid from Caryn Chazen's checking account. Caryn Chazen does not have any income and the funds deposited into her checking account are from Michael Chazen only." Id. at p.13, ¶7. Already in Plaintiff's possession were a copy of a mortgage statement for the Andrea Court property evidencing the amount of the monthly payment and that the statement identified Caryn Chazen as the borrower, as well as a copy of the

deed to the Andrea Court property evidencing that title was held solely by Caryn Chazen. ECF No. 14-3 at pp.23-26.

On August 20, 2018, Plaintiff submitted the above-referenced interrogatories to Plaintiff seeking answers to questions about, among other things, Caryn Chazen's compensation from the services she provided to Defendant's law firm and details about how the mortgage was paid. When those interrogatories were submitted, Plaintiff already had been told by Defendant and Defendant's counsel that: Defendant's wife worked without compensation at Defendant's law firm; that the marital residence and the mortgage that was a lien on that property were in the name of Caryn Chazen; and that Defendant supplied the funds used to make the monthly mortgage payments. Yet interrogatories numbered four through six seek information beyond how Ms. Chazen is paid now and how the mortgage is handled now. Interrogatory No. 4 asks, in part: "Have there been any years during which Caryn Chazen was paid for her services to your firm?" Interrogatory No. 5 asks, in part: "For any year during which Caryn Chazen was paid for her services to your firm, did you deduct the payment made to her as a business expense on Schedule C of your Form 1040 Individual Income Tax Return for that year?" Defendant's answers to those historical questions was in the present tense: "Caryn is not employed by me for a salary or paid for her services." Because those answers were not fully responsive to the questions asked, the Court can not conclude that those questions were unnecessarily duplicative or cumulative.

The remaining interrogatories probe into details of Defendant's own tax returns and query whether Ms. Chazen has received funds or property from sources other than his law firm and then used those funds to pay the Andrea Court mortgage. As a result, the Court can not conclude that these questions were unnecessarily duplicative or cumulative. Thus, in specifics

and taken as a whole, the interrogatories do not meet the first prong of Fed. R. Civ. P. 26(b)(2)(C)'s standard of "unreasonably duplicative or cumulative."

The Court next examines whether Plaintiff had "ample opportunity to obtain the information by [other] discovery." It is unclear from the submissions of the parties exactly when Plaintiff's inquiry of Defendant began nor why. Plaintiff, in its Installment Plan Motion, contended Defendant had defaulted on two payment plans, while Defendant counters with an exhibit showing a list of payments made on the second plan from late 2011 through April 2018. It appears from the submissions that the difference may reflect Plaintiff's stated expectation that payments would be made to the Department of Justice, while Defendant's former counsel states payments were supposed to be, and most actually were, made to an IRS office in Ohio. ECF No. 14-3 at p.10; ECF No. 18 at p.24, ¶5. Regardless, the certification of Internal Revenue Service officer Mark Spitz submitted with the Installment Plan Motion states that this latest examination of the Judgment Debtor/Defendant began with an inquiry into Mr. Chazen's disposable earnings for 2017, a task then complicated because "he has not yet filed a 2017 income tax return." ECF No. 14-3 at p.2, ¶5. It appears from certifications and affidavits submitted by the parties, as well as to the Installment Plan Motion, that the parties have been in discussions since at least April 2018. *See* Landis 8-2-2018 Affidavit at ECF No. 18, p.10, ¶4 ("On April 19, 2018, I first spoke with Revenue Officer Spitz regarding Mr. Chazen's matter…"). Plaintiff filed the Installment Plan Motion on July 19, 2018, or three months after Mr. Landis first spoke with Mr. Spitz. Both Plaintiff's and Defendant's submissions are silent about the "ample opportunity to obtain the information by [other] discovery" prong.

Defendant contends Plaintiff already has the information it needs for a dispute over "not 'significantly changed' circumstances" but rather "an argument of a disallowance of necessary housing expense." ECF No. 27 at ¶14. Plaintiff counters:

> "The primary dispute is whether or not Mr. Chazen can count as an expense the money he gives his wife to pay the mortgage on a house held in her name. The United States' position is this: Mr. Chazen's mortgage payments compel the conclusion that he is a joint owner of the house, the Government liens against Mr. Chazen attach to that house, and proceeds from selling the residence would apply against Mr. Chazen's tax liability. Alternatively, if Mr. Chazen denies ownership, he cannot then claim the mortgage payments in determining what he can pay each month in satisfaction of the judgment against him. Mr. Chazen cannot…disclaim[] all ownership interest in the house while siphoning most of his income towards paying the mortgage on it." ECF No. 32 at pp.1-2, N.1.

Considering the stakes involved, the chasm between the parties' positions as to the central issue in this dispute, as well as the relatively short time from April through July 2018 when the Parties were in discussions about this issue, the Court is not persuaded that Plaintiff had "ample opportunity to obtain the information by [other] discovery." Accordingly, because the Court does not find that there exists a likelihood the resulting benefits of Plaintiff's discovery requests would be outweighed by the burden or expenses of complying with those requests, Plaintiff's Motion to Compel Discovery is **GRANTED**.

## IV. CONCLUSION AND ORDER

Having considered the papers submitted pursuant to Federal Rule of Civil Procedure 78 and for the reasons set forth above;

**IT IS** on this of 4th day of January 2019,

**ORDERED** that Plaintiff's Motion to Compel Discovery from Defendant [ECF No. 28] is **GRANTED**; and it is further

**FURTHER ORDERED** that Caryn Chazen's Motion to Quash Subpoena [ECF No. 24] is **DENIED**; and it is

**FURTHER ORDERED** that Defendant and Ms. Chazen have 20 days from the date of this order to produce documents and answers responsive to Plaintiff's Subpoena and 45 days from the date of this order to sit for a Deposition.

*s/ Douglas E. Arpert*
DOUGLAS E. ARPERT
UNITED STATES MAGISTRATE JUDGE